

# NUMBER 13-21-00182-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

CITY OF HARLINGEN, TEXAS
AND THE VALLEY INTERNATIONAL
AIRPORT BOARD OF DIRECTORS,                                    Appellants,

v.

SUN VALLEY AVIATION, INC.,                                        Appellee.

---

On appeal from the 404th District Court
of Cameron County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Silva
Memorandum Opinion by Justice Longoria**

Appellants City of Harlingen, Texas (the City) and the Valley International Airport

Board of Directors (VIA) appeal from the trial court's order denying in part their plea to the jurisdiction as to appellee Sun Valley Aviation, Inc.'s (SVA) breach of contract claim. In two issues, appellants argue: (1) they are entitled to governmental immunity; and (2) the trial court lacked subject matter jurisdiction over VIA. We reverse and render.

## I.    BACKGROUND

In August 2012, SVA entered into a lease agreement with the City acting through VIA. The lease allows SVA to operate on land owned by the City, located at the airport. The lease included five areas leased to SVA by the City: (1) Facility Lease Area "A"; (2) Facility Lease Area "B"; (3) Terminal Lease Area; (4) Parking Lease Area "A"; and (5) Fuel Farm Lease area. Rent was set at $0.15 per square foot, increasing every five years. The lease term was forty years "after the date the certificate of occupancy [was] granted," which was 2012. The lease also included an Option Area "A" which could "be used for future expansion" at SVA's option, subject to terms within the lease.

As it relates to Option Area "A," the lease specifies:

Option Area "A", approximately .688 acres to be used for future expansion. At [SVA's] option, to be exercised by written notice delivered by [SVA] to City and not less than one hundred twenty (120) days in advance of the effective date of the commencement of the construction, Option Area "A" shall be made available to [SVA] under similar terms and conditions for the construction of additional aircraft service and storage facilities and related appurtenances.

In December 2020, SVA notified VIA of its intent to exercise its option to build a hangar in Option Area "A." SVA requested that the rent for Option Area "A" be set at $0.15 per square foot—even though SVA was paying $0.17 per square foot on the initial lease at the time—and it requested a forty-year lease term commencing from "the date a

2

Certificate of Occupancy has been received." The City countered SVA's proposal, requesting $0.17 per square foot and a lease term to expire on the same date as the initial lease. The parties did not reach an agreement.

SVA filed its original petition for declaratory judgment, temporary restraining order (TRO), and injunctive relief seeking a declaration that the option agreement was enforceable under the terms it requested in its December 2020 proposal and to prohibit appellants from interfering with its construction of a hangar on the Option Area "A" property. The trial court granted a TRO. Appellants answered and filed a response in opposition to the injunction. SVA then amended its petition alleging additional causes of action, including breach of the lease agreement for failure to lease Option Area "A." Appellants filed an answer and subsequently filed their plea to the jurisdiction, attaching numerous exhibits: (1) the 2012 lease agreement, (2) the 2019 lease agreement amendment, (3) the 2020 lease agreement amendment, (4) SVA's December 2020 option letter, (5) appellants' proposed lease amendment, (6) "February 18, 2021 Crane Letter," (7) correspondence between the parties related to the terms of the lease of Option Area "A," (8) the affidavit of Patrick Kornegay, (9) the City of Harlingen Charter, and (10) the affidavit of Marv Esterly. The trial court granted the plea to the jurisdiction as to all claims except for SVA's breach of contract claim. This interlocutory appeal ensued. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II. PLEA TO THE JURISDICTION

### A. Standard of Review & Applicable Law

We review a plea to the jurisdiction under a de novo standard of review. *Westbrook*

*v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). A plea to the jurisdiction seeks to dismiss a case for want of jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

The plaintiff has the initial burden to plead facts affirmatively showing that the trial court has jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Whether the pleader has alleged facts that affirmatively demonstrate the trial court's subject matter jurisdiction is a question of law that we review de novo. *Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the pleader, look to the pleader's intent, and accept as true the factual allegations in the pleadings. *Id.* at 226, 228.

When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, even when the evidence implicates the merits of the cause of action. *Id.* at 227; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). In considering the evidence, we take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Miranda*, 133 S.W.3d at 227–28.

Local governmental entities have absolute immunity from suit unless immunity has been expressly waived by the Legislature. *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 836 (Tex. 2010); *see Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011); *see also City of Alamo v. Osuna*, No. 13-13-00317-CV, 2014 WL 6602387, at *2 (Tex. App.—Corpus Christi–Edinburg Nov. 20, 2014, no

pet.) (mem. op.). Immunity deprives a trial court of subject matter jurisdiction. *Miranda*, 133 S.W.3d at 224. Governmental immunity has two components—immunity from liability and immunity from suit. *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). A unit of state government is immune from suit and liability unless the state consents. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). A governmental entity that enters into a contract waives immunity from liability and voluntarily binds itself to the contractual terms, but the entity does not thereby waive immunity from suit. *Id.*; *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 215 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Here, both parties agree that the issue is whether the City is immune from suit for breach of contract.

**B.     Essential Terms**

Because it is dispositive, we first address the City's argument that, even if it could be construed as a contract for goods or services, the lease lacks "essential terms" as required under chapter 271.

The Legislature has waived local governments' immunity for breach of contract claims arising from "a written contract stating the essential terms of [an] agreement for providing goods or services to [a] local governmental entity." TEX. LOC. GOV'T CODE ANN. § 271.151(2)(A). A contract contains its "essential terms" when it outlines the material terms necessary to make a contract enforceable. *See Kirby Lake*, 320 S.W.3d at 838 (holding that an agreement satisfied the "essential terms" requirement because it "clearly outlined" "[t]he names of the parties, property at issue, and basic obligations").

5

> Chapter 271 does not define "essential terms." *City of Houston v. Williams*, 353 S.W.3d 128, 138 (Tex. 2011). But the supreme court has characterized essential terms for purposes of chapter 271 to include, among other things, the names of the parties, the price to be paid, the service to be rendered, the property at issue, and the time of performance. *Id.* at 138–39; *Kirby Lake Dev*[.], 320 S.W.3d at 838. The essential terms must outline the basic obligations of the parties. *Kirby Lake Dev*[.], 320 S.W.3d at 838; [*City of Galveston v.* ]*CDM Smith*[, *Inc.*], 470 S.W.3d [558,] 565 [(Tex. App.—Houston [ 14th Dist.] 2015, pet denied)]. Courts consider each contract separately on a case-by-case basis to determine its essential terms. *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992); *Clear Creek Indep. Sch. Dist. v. Cotton Com*[.] *USA, Inc.*, 529 S.W.3d 569, 580 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

*Hous. Cmity. Coll. Sys. v. HV BTW, LP*, 589 S.W.3d 204, 212 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

The City does not dispute the names of the parties are clear. Instead, the City contends that the lease term, land description, and rental amounts with respect to Option Area "A" are all essential terms missing from the lease agreement. Ultimately, the City argues that the agreement is "so incomplete" it constitutes an "agreement to agree."

Attached to the lease is "Exhibit 'A'" which contains a blueprint of the area and specifies Option Area "A." The lease further states, in regard to rent for Option Area "A":

> The Option Fee shall be a one time charge of $100.00 to be paid at the execution of this lease. The term of this option shall be equal to and consistent with the term plus all options of the Lease herein being executed. In the event Lessee exercises its option to rent additional land for the construction of an additional hangar and such land is leased to Lessee by City, Lessee agrees to pay City ground rent for the use of such land in the amount per year to be negotiated and agreed upon by City and Lessee, with the first monthly payment to be made on or before the first (1st) day of the month next succeeding substantial completion and occupancy of the additional hangar by Lessee, and successive payments due on or before the first (1st) day of each succeeding month.

6

The City argues that the "similar terms" and "to be negotiated" language in these provisions of the lease indicates the uncertainty of these terms.

Texas law confers upon the parties the ability to agree to leave non-essential matters open for later negotiation. *McCulley Fine Arts Gallery, Inc. v. X Partners*, 860 S.W.2d 473, 477 (Tex. App.—El Paso 1993, no writ). A contract fails only when an essential term is left open for future negotiations. *Id.* Thus, if the parties agree on the essential terms of a contract, the agreement may leave other non-essential provisions open for future adjustment and agreement. *See Kanan v. Plantation Homeowner's Ass'n Inc.*, 407 S.W.3d 320, 330 (Tex. App.—Corpus Christi–Edinburg 2013, no pet.) (citing *Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 555 (Tex. 1972)). Whether a term is essential to a particular contract should be determined on an agreement-by-agreement basis. *See Vermont Info. Processing, Inc. v. Montana Beverage Corp.*, 227 S.W.3d 846, 852 (Tex. App.—El Paso 2007, no pet.) (quoting *T.O. Stanley Boot Co.*, 847 S.W.2d at 221).

SVA argues that the "to be negotiated" language is not in reference to the rental amount for Option Area "A," but rather refers to separate "additional land for the construction of additional hangars." We disagree with this interpretation. The quoted language, including the "to be negotiated" statement, falls under the contract's heading "Option Area 'A.'" While SVA contends that the second sentence of the paragraph ("The term of this option shall be equal to and consistent with the term plus all options of the Lease herein being executed") provides that the essential terms of the agreement for Option Area "A" will mirror those of the original lease, this sentence provides merely that

the *lease term*—or duration—will be consistent with the original lease, not *all essential terms*. Notably, the rental rate for Option Area "A" was explicitly left open for future negotiation.

"It is well-settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding on the parties and merely constitutes an agreement to agree." *Meru v. Huerta*, 136 S.W.3d 383, 391 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.) (citing *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000)); *see Southern v. Goetting*, 353 S.W.3d 295, 300 (Tex. App.—El Paso 2011, pet. denied) ("Agreements to enter into negotiations in the future are not enforceable because there is no way to determine the contract that would result from the negotiations." (citing *Estate of Eberling v. Fair*, 546 S.W.2d 329, 334 (Tex. App.—Dallas 1976, writ ref'd n.r.e.))). Here, because an essential term of the option contract was left open for negotiation in the future, no binding contract exists. *See T.O. Stanley Boot Co.*, 847 S.W.2d at 221. Therefore, appellants' immunity has not been waived as to SVA's breach of contract claim under chapter 271, and the trial court erred in denying the plea to the jurisdiction as to that claim. We sustain appellants' first issue in part.[1]

### III. CLAIMS AGAINST VIA

Appellants contend that the trial court erred in denying the plea to the jurisdiction

---

[1] Having sustained appellants' first issue as to the essential terms argument, we need not address appellants' first issue as it relates to goods and services or consequential damages. *See* TEX. R. APP. P. 47.1.

as to SVA's breach of contract claim against VIA because VIA was not a party to the lease nor is it "an entity with jural authority to be sued." In response, SVA agrees that VIA is not a party to the breach of contract claim and instead states that it sued VIA only on another cause of action which has already been dismissed. Because there is no existing breach of contract claim against VIA, appellants' second issue is overruled as moot.

## IV.    CONCLUSION

We reverse the trial court's judgment denying appellants' plea to the jurisdiction as to SVA's breach of contract claim and render judgment dismissing SVA's breach of contract claim.

NORA L. LONGORIA
Justice

Delivered and filed on the
4th day of May, 2023.

9